*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0072P (6th Cir.)
File Name: 04a0072p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee/
Cross-Appellant,*

v.

LONNIE D. CARPENTER
(01-5368) and SHEILA J.
CARPENTER (01-5370),
*Defendants-Appellants/
Cross-Appellees.*

Nos. 01-5368/
5370/5446

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 99-00045—Thomas G. Hull, District Judge.

Argued and Submitted: June 11, 2003

Decided and Filed: March 9, 2004

Before: BOGGS, Chief Judge; MARTIN, SILER,
BATCHELDER, DAUGHTREY, MOORE, COLE,
CLAY, GILMAN, GIBBONS, ROGERS, SUTTON, and
COOK, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Nikki C. Pierce, FEDERAL DEFENDER
SERVICES OF EASTERN TENNESSEE, Greeneville,
Tennessee, for Appellants. Michael E. Winck, ASSISTANT
UNITED STATES ATTORNEY, Knoxville, Tennessee, for
Appellee. **ON BRIEF:** Nikki C. Pierce, FEDERAL
DEFENDER SERVICES OF EASTERN TENNESSEE,
Greeneville, Tennessee, for Appellants. Michael E. Winck,
ASSISTANT UNITED STATES ATTORNEY, Knoxville,
Tennessee, for Appellee. Lonnie D. Carpenter, Rogersville,
Tennessee, pro se.

_____

### OPINION

_____

SILER, J., delivered the opinion of the court, in which
BOGGS, C. J., BATCHELDER, GIBBONS, ROGERS,
SUTTON, and COOK, JJ., joined. GILMAN, J. (pp. 12-17),
delivered a separate concurring opinion. MOORE, J. (pp. 18-
23), delivered a separate dissenting opinion, in which
MARTIN, DAUGHTREY, COLE, and CLAY, JJ., joined,
with MARTIN, J. (p. 24), also delivering a separate
dissenting opinion.

SILER, Circuit Judge. Defendants Lonnie D. and Sheila J.
Carpenter were convicted of manufacturing marijuana. One
of the issues that they raised on appeal was a claim that the
district court erred in failing to suppress the evidence of their
illegal activity. The government cross-appealed the district
court's ruling that limited the amount of the Carpenters' land
subject to forfeiture. A divided panel of this court affirmed
in part, vacated in part, and remanded the case for further

proceedings. *United States v. Carpenter*, 317 F.3d 618 (6th Cir. 2003).

Rehearing en banc was subsequently granted in order to consider a question regarding the application of *United States v. Leon*, 468 U.S. 897, 922 (1984), that is, whether a search conducted pursuant to an invalid warrant may be saved under the "good-faith exception" on the basis that the officers had other information that was not presented to the issuing magistrate, but that would have established probable cause. We need not reach that question because we conclude that the police officers' reliance on the deficient warrant was reasonable because the information that *was* presented to the issuing judge was sufficient to support a good-faith belief in the warrant's validity. We therefore **REINSTATE** the judgment of the panel in this case, and adopt the panel opinion except for its discussion of the *Leon* good-faith exception, and **REMAND** the case to the district court for further proceedings.

## I. BACKGROUND

### A. Factual background

In June 1999, Police Lieutenant Robert Crumley was conducting helicopter surveillance over Hawkins County, Tennessee. He spotted patches of marijuana growing in fields approximately 900 feet away from a residence belonging to the Carpenters. In addition, he observed beaten paths leading from the back door of the residence to the marijuana patches and saw two men, who turned out to be Lonnie Carpenter and his son, walking from the patches toward the residence. Crumley relayed this information to a team of police officers on the ground.

Captain Ronnie Lawson, a member of the ground team, sought a warrant to search the residence. A state judge, satisfied that Lawson's affidavit established probable cause,

issued the requested search warrant. The affidavit, which the warrant incorporated, described the location of the Carpenter residence and then set forth the following reasons (in exactly the syntax shown) why Lawson believed that evidence of criminal conduct would be found in the residence:

> On June 23, 1999 at approx 12:30 pm, Helicopter Pilot Lt Bob Crumley was conducting an aerial search of Hawkins Co when he was flying over the above described property he saw numerous Marijuana Plants growing. Near the residence.
> Upon information I received from Lt Crumley, there is a road connecting the above described residence to the Marijuana Plants. Having personal knowledge that Lt. Crumley is certified in the identification of Marijuana I feel there is probable cause to search the said residence and property and seize any illegal contraband found.

Armed with this warrant, police officers searched the Carpenters' residence. They seized marijuana, marijuana seeds, and other items associated with marijuana manufacturing.

### B. Procedural background

In July 1999, the Carpenters were indicted for manufacturing marijuana and with employing a minor to assist them, in violation of 21 U.S.C. §§ 841 and 861, respectively. The indictment also sought the forfeiture of the Carpenters' real property, a 100-acre farm, on the basis that it had been "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" marijuana manufacturing. 21 U.S.C. § 853(a)(2).

The district court subsequently denied the Carpenters' motions to suppress the evidence seized during the search of their residence. The Carpenters were eventually acquitted on the charge that they employed a minor to manufacture

marijuana, but were found guilty of manufacturing marijuana. The jury also concluded that the Carpenters' property had been used to commit the crime, thereby triggering a forfeiture of the property.

## II. ANALYSIS

### A. The motions to suppress

#### 1. *Standard of review*

In reviewing the denial of a motion to suppress, we defer to the district court's factual findings unless they are clearly erroneous. Legal conclusions, however, are reviewed *de novo*. *United States v. Bartholomew*, 310 F.3d 912, 919 (6th Cir. 2002), *cert. denied*, 537 U.S. 1177 (2003).

#### 2. *Whether the affidavit provided a substantial basis for the determination of probable cause*

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. In determining whether an affidavit establishes probable cause,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (internal quotation marks and alterations omitted).

To justify a search, the circumstances must indicate why evidence of illegal activity will be found "in a particular place." There must, in other words, be a "nexus between the place to be searched and the evidence sought." *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998). Lawson's affidavit did not provide a substantial basis for the issuing judge's conclusion that probable cause existed to search the Carpenters' residence, because it failed to set forth sufficient facts that incriminating evidence would be found *there*, rather than in some other place.

The facts that marijuana was growing "near" the residence and that a road ran nearby fall short of establishing the required nexus between the Carpenters' residence and evidence of marijuana manufacturing. If Lawson's affidavit had stated that beaten paths led from the marijuana patches to the door of the residence, and that two men had been spotted walking from the marijuana patches to the residence, the affidavit would likely have been sufficient to establish probable cause. *See United States v. Robins*, 978 F.2d 881, 892 (5th Cir. 1992) (holding that where a police detective has ascertained that a particular person, Robins, was a marijuana dealer, "[t]here was undoubtedly an adequate nexus, between Robins' residence and Detective Soule's allegations to the Magistrate Judge about Robins' marijuana operation, to support the search warrant for the marijuana and related records [that] Detective Soule's experience and common sense told him would likely be at Robins' residence"); *United States v. Malin*, 908 F.2d 163, 166 (7th Cir. 1990) (holding that a police officer's "observation of marijuana growing in Malin's [fenced] yard reasonably yielded the conclusion that marijuana or other evidence of marijuana possession would be found in Malin's house").

These additional facts, however, were not included in the affidavit. The facts in the affidavit that did connect the marijuana patches and the residence were too vague, generalized, and insubstantial to establish probable cause.

We therefore conclude that the state judge lacked a substantial basis to determine that probable cause existed to search the Carpenters' residence. The government, indeed, concedes this point. Because the search of the Carpenters' residence violated the Fourth Amendment, we are left with the question of whether the evidence seized should be suppressed.

### 3. The good-faith exception to the exclusionary rule

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987). Courts should not, however, suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). But this good-faith exception to the exclusionary rule does not apply in circumstances where "the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id.* at 923. Thus, an officer would not "manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quotation omitted).

### a. Whether the officers had a reasonable basis to believe that the information actually submitted supported the issuance of the search warrant

Pursuant to *Leon*, we must now decide whether the officers in the instant case had a reasonable basis to believe that the information that *was submitted* supported the issuance of the search warrant. In considering this question, we agree with the following analysis by the Fourth Circuit:

If a lack of a substantial basis also prevented application of the *Leon* objective good faith exception, the exception

would be devoid of substance. In fact, *Leon* states that . . . a finding of objective good faith [is inappropriate] when an officer's affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." This is a less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause in the first place.

*United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (citation omitted).

The affidavit in the case before us failed to provide a substantial basis for probable cause because it did not provide the required nexus between the residence and the illegal activity. However, the affidavit was not completely devoid of any nexus between the residence and the marijuana that the police observed. Rather, it noted both that the marijuana was growing "near" the residence and that "there is a road connecting" the residence and the marijuana plants.

We previously found *Leon* applicable in cases where we determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause. *See United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998) (upholding a search where the affidavit underlying the warrant described the residence, the items sought, and the defendant's counterfeiting scheme, but connected the place to the illegal activity only by stating that the residence "was available" to the defendant); *United States v. Shultz*, 14 F.3d 1093, 1098 (6th Cir. 1994) (upholding a search of safe deposit boxes at a bank where the affidavit underlying the warrant connected the boxes and the defendant's trafficking in illegal drugs only by stating that the officer's training and experience led him to believe that evidence would be located there).

A useful contrast is provided by *United States v. Hove*, 848 F.2d 137 (9th Cir. 1988). In *Hove,* the police officer had obtained a warrant to search a particular residence after submitting to the issuing magistrate an affidavit that failed to provide *any* nexus between the residence and illegal activity. *Id.* at 139-40 ("[T]he final warrant application, while it set forth facts suggesting that Kimberly Hove had sent threatening letters, never linked Kimberly Hove or any suspected criminal activity in any way with the 2727 DeAnza residence."). The Ninth Circuit held that no reasonable officer could have believed that the warrant was valid, given the failure of the affidavit to articulate any nexus between the illegal activity and the place to be searched.

In the present case, however, the affidavit was not totally lacking in facts connecting the residence to the marijuana patches. These facts, as we explained above, were too vague to provide a substantial basis for the determination of probable cause. But these facts (unlike *Hove*) were not so vague as to be conclusory or meaningless. *See United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993) ("This is not a case in which the affidavit contained mere conclusory assertions or a single piece of evidence which the law of the stationhouse shop would recognize as clearly insufficient."). We therefore conclude that reasonable officers could have believed that the affidavit as submitted, even without the additional relevant information known to the officers, was sufficient to support the issuance of the warrant.

At oral argument, the Carpenters contended that Lawson's omission from his affidavit of the additional information known to the police (concerning the beaten paths and the two men walking from the marijuana patches to the residence) militated against the conclusion that they executed the warrant in good-faith reliance on its reasonableness. We disagree. Extrapolating from *Franks v. Delaware*, 438 U.S. 154 (1978), this court has recognized that "material omissions [from an affidavit] are not immune from inquiry under

*Franks.*" *United States v. Atkin*, 107 F.3d 1213, 1216-17 (6th Cir. 1997) (discussing *Franks*'s holding that a defendant is entitled to an evidentiary hearing on the veracity of the affidavit if (1) he or she can make a preliminary showing that portions of the affidavit are deliberately or recklessly false, and (2) after setting aside the false information, the remaining parts of the affidavit would not support a finding of probable cause). But to be constitutionally problematic, the material must have been deliberately or recklessly omitted and must have *undermined* the showing of probable cause. *See id.* ("If the defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists."). The Carpenters have made no showing that Lawson omitted facts from his affidavit deliberately or recklessly. Moreover, the omitted facts would have *bolstered* the affidavit's showing of probable cause, not undermined it.

The fact that a police officer had such additional knowledge certainly raises the inference that the officer should have recognized that a stronger showing of probable cause could have been made to the issuing magistrate. But such recognition says nothing about the reasonableness of the belief that the information that was presented was sufficient.

To the extent that the Carpenters are continuing to argue that the factual assertions that were in the affidavit were both false and recklessly included (a traditional *Franks* challenge), the district court found after a hearing that the affidavit was reasonably accurate and that no evidence supported the proposition that any inaccuracy was deliberately or recklessly included. These findings were not clearly erroneous.

**b. Whether the fact that the officers had other information that was not presented to the issuing magistrate, but that would have established probable cause, is relevant to the good-faith analysis**

Since we have concluded that the police officers' reliance on the deficient warrant was reasonable based on the information that actually was submitted to the issuing judge, we leave for another day the question of whether the search could have been saved under the "good-faith exception" on the basis that the officers had other information that was not presented to the issuing magistrate, but that would have established probable cause. *See, e.g., United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001).

## B. Other issues

Rule 35 of the Rules of the Sixth Circuit provides that "[t]he effect of the granting of a rehearing en banc shall be to vacate the previous opinion and judgment of this Court." All of the issues raised by the Carpenters on appeal are thus before us. In our opinion, however, the reasoning of the prior panel was correct on all issues other than its analysis of the motions to suppress. We therefore reinstate and reaffirm the judgment in *United States v. Carpenter*, 317 F.3d 618 (6th Cir. 2003), and adopt its opinion except for its discussion of the *Leon* good-faith exception. *See Donahey v. Bogle*, 129 F.3d 838, 844 (6th Cir. 1997) (en banc) (reinstating the prior panel opinion on all issues not otherwise discussed by the en banc court), *vacated on other grounds*, 524 U.S. 924 (1998).

## III. CONCLUSION

For all of the reasons set forth above, we **REINSTATE** the judgment of the panel in this case, albeit with different reasoning, and **REMAND** the case to the district court for further proceedings.

_____

## CONCURRENCE

_____

RONALD LEE GILMAN, Circuit Judge, concurring. I concur in the conclusion reached by the majority opinion and in most of its reasoning. But I respectfully disagree with its decision to defer to another day the issue of whether a court should consider the additional information known to the officers but not communicated to the magistrate in deciding if the *Leon* good-faith exception has been satisfied. The government persuaded the district court that the consideration of such additional information was appropriate. In addition, the issue has been fully briefed and argued on appeal and is discussed in the dissenting opinion. Deciding the issue is therefore appropriate in order to provide guidance to the district courts within our circuit and to future panels of this court. *See Webster v. Reproductive Health Servs.*, 492 U.S. 490, 532-35 (1989) (Scalia, J., concurring in part and concurring in the judgment) (discussing numerous cases where the Supreme Court has departed from the general principle of deciding cases on the narrowest possible constitutional grounds).

As part of its argument, the government contends that the good-faith exception to the exclusionary rule should apply in this case because the police officers knew additional facts that were not included in Captain Lawson's affidavit, but that, when added to the information contained in the affidavit, would have established probable cause. Specifically, the police (1) knew that beaten paths led from the back door of the residence to the marijuana patches, and (2) had seen two men walking from the patches to the residence. I am of the opinion that any consideration of this additional information would be contrary to controlling Supreme Court precedent.

The Fourth Amendment prohibits police officers, absent certain exceptions not applicable here, from conducting searches of a residence without a properly issued warrant. *Agnello v. United States*, 269 U.S. 20, 33 (1925) ("Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant."). An officer's correct belief in the existence of probable cause does not obviate the warrant requirement. *Id.* ("And such searches are held unlawful notwithstanding facts unquestionably showing probable cause.").

According to the Supreme Court in *Leon*, evidence obtained through a search pursuant to a deficient warrant must be suppressed, unless the police officer acted "in objectively reasonable reliance on a subsequently invalidated search warrant." 468 U.S. at 922. Information tending to show the existence of probable cause that was not disclosed to the issuing magistrate cannot logically have any bearing on the reasonableness of the presenting officer's belief *that the warrant was properly issued*, as opposed to the officer's reasonable belief that probable cause existed for the search. The straightforward reason for this conclusion is that no magistrate can base his or her determination of the existence of probable cause upon information never received.

*Leon* and *Agnello* make clear that the relevant question is whether the officer reasonably believed that the warrant was properly issued, *not* whether probable cause existed in fact. *See United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988) ("The *Leon* test for good faith reliance is clearly an objective one and it is based solely on facts presented to the magistrate. An obviously deficient affidavit cannot be cured by an officer's later testimony on his subjective intentions or knowledge.") (citation omitted); *United States v. Bynum*, 293 F.3d 192, 212 (4th Cir. 2002) (Michael, J., dissenting) ("*Leon* requires that the officer be able to entertain a reasonable belief that the magistrate had a substantial basis for finding probable cause. . . . [W]hat the officer knew but did not tell the magistrate is irrelevant.").

The government argues that *Leon* itself described situations in which a reviewing court would need to look to facts beyond the affidavit in order to ascertain whether the officers could have reasonably relied on a deficient warrant. I do not quarrel with this argument. But nothing in *Leon* suggests the illogical position that information supporting probable cause that is known to the officers but not to the issuing magistrate could make the officers' reliance on the deficient warrant reasonable. Instead, *Leon* describes several specific situations where the relevant extra-affidavit facts are ones other than pertinent, truthful information known to the officers but not communicated to the magistrate. 468 U.S. at 923. Suppression is appropriate, for example, "in cases where the issuing magistrate wholly abandoned his judicial role," because the Fourth Amendment requires a magistrate to be neutral and detached and to make his or her own determination of probable cause. *Id.* "[N]o reasonably well trained officer should rely on the warrant" where the officer knows that it was not validly issued. *Id.* Similarly, the *Leon* Court instructed:

[O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances—including whether the warrant application had previously been rejected by a different magistrate—may be considered.

*Id.* at 922 n.23.

This passage from *Leon* points out the need to consider the circumstances where extra-affidavit information might be relevant to an officer's good-faith reliance on the warrant's validity. For example, if an officer takes an affidavit to nine

magistrates, all of whom decide that it does not establish probable cause, and the officer subsequently relies on a later-invalidated warrant issued by a tenth magistrate presented with the same affidavit, the fact that nine magistrates had decided against issuing a warrant raises an inference that the officer's reliance on the warrant was not objectively reasonable. A contrasting situation is found in the case before us, where the officer knew of facts that would have established probable cause, but omitted those facts from his affidavit and then relied on the warrant issued by a judge who did not know those additional facts. Knowing additional facts that would establish probable cause, but that were not presented to the issuing magistrate, does not establish that the officer reasonably believed that the warrant was properly issued. In the first situation, extra-affidavit facts are relevant to the pertinent question of whether the officer reasonably believed that the warrant was valid. But the extra-affidavit facts in the second situation have no bearing on the question.

The government also cites the Eleventh Circuit's decision in *United States v. Martin*, 297 F.3d 1308 (11th Cir.), *cert. denied*, 123 S. Ct. 667 (2002), in support of its proposed rule. In *Martin*, the Eleventh Circuit concluded that although the affidavit did not establish probable cause, it "contained sufficient indicia of probable cause to enable a reasonable officer to execute the warrant thinking it valid." *Id.* at 1315. Because no other exception to *Leon* applied (e.g., the magistrate had not abandoned his judicial role), this conclusion should have ended the Eleventh Circuit's inquiry.

The *Martin* court then proceeded, however, to redundantly "make an inquiry as to whether [the police officer] reasonably relied upon the search warrant." *Id.* at 1318. In answering this question, the Eleventh Circuit decided that it was permitted to consider additional facts supporting probable cause that the police officer had known but had not disclosed to the issuing magistrate. The court concluded: "Under the totality of the circumstances, taking into account the facts

known to [the police officer] at the time he applied for the search warrant, we find that [the police officer] reasonably believed that probable cause existed to execute a search warrant." *Id.* at 1320. I find this portion of the opinion in *Martin* perplexing, because the relevant question under *Leon* is whether the officer reasonably believed that the warrant was valid, not whether probable cause existed. Perhaps this part of *Martin* can be chalked up to dicta. But even if this characterization is incorrect, this court is of course not bound by the holdings of our sister circuits. *Nixon v. Kent County*, 76 F.3d 1381, 1388 (6th Cir. 1996) (en banc).

The government also recites the comment in *Martin* that "[t]he exclusionary rule is meant to guard against police officers who purposely leave critical facts out of search warrant affidavits because these facts would not support a finding of probable cause." 297 F.3d at 1320. I agree with this statement, but find it underinclusive. The Supreme Court stated in *Leon* that "the exclusionary rule . . . operates as a judicially created remedy *designed to safeguard Fourth Amendment rights generally* through its deterrent effect." 468 U.S. at 906 (internal quotation marks omitted) (emphasis added). Although an officer's intentional omission of unsupportive facts from a search warrant application may well violate the Fourth Amendment, it is by no means the only way to violate the Amendment. *See, e.g., id.* at 922-24 (listing multiple examples of Fourth Amendment violations). The *Martin* court's statement of the exclusionary rule's purpose is therefore underinclusive and does not justify the government's position.

One other conceivable source of authority for the consideration of the undisclosed information, which this court relied upon in the unpublished decision of *United States v. Leaster*, No. 00-6501, 2002 WL 1147343, at *8 (6th Cir. May 28, 2002), is *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Although the Supreme Court did indeed state in *Anderson* that "whether it was objectively legally reasonable

to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials," *id.* at 641, this statement was made in the context of deciding whether qualified immunity protected an officer conducting a warrantless search that was undertaken because of exigent circumstances. Given that no warrant is required for a search undertaken with both probable cause and exigent circumstances, I believe that *Anderson* provides no support for the rule proposed by the government. *Leaster* failed to make this key distinction and is thus unpersuasive.

The Eighth Circuit also relied on *Anderson* to justify its adoption of the rule proposed by the government. *See United States v. Martin*, 833 F.2d 752, 756 (8th Cir. 1987). It did so without acknowledging the significance of the "exigent circumstances" exception to the warrant requirement, an exception not present in the case before us. Subsequent Eighth Circuit cases have simply followed *Martin* without any further analysis. *See, e.g., United States v. Johnson*, 78 F.3d 1258, 1263 (8th Cir. 1996); *United States v. Simpkins*, 914 F.2d 1054, 1057 (8th Cir. 1990). I therefore find the Eighth Circuit cases equally unpersuasive.

No compelling authority, in sum, stands for the proposition that a search conducted pursuant to an invalid warrant can be saved under *Leon*'s good-faith exception on the basis that the officers had other information that was not presented to the issuing magistrate, but that would have established probable cause. This proposition is contrary to *Leon* and, in my opinion, the court should so declare in the case before us.

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting. I respectfully dissent because the officers' reliance upon the warrant was not reasonable given the exiguous information presented to the issuing judge, and thus the *Leon* good-faith exception does not apply to this case. *See United States v. Leon*, 468 U.S. 897 (1984).

Consequently, I believe that we must reach the issue, buried in the sand by the majority, of whether an officer can reasonably rely on a warrant when the officer possesses information that could establish probable cause but does not communicate that information to the magistrate. I wholeheartedly agree with Judge Gilman's opinion on the proper role (or lack thereof) of withheld information in the calculus of *Leon*, and I do not elaborate on its reasoning at great length. Judge Gilman is certainly correct that Captain Lawson's affidavit was insufficient to permit the issuing magistrate to determine that probable cause existed. Judge Gilman also properly concludes that information known to the officers, but not relayed to the issuing magistrate, cannot preserve the fruits of an invalid warrant under the *Leon* good-faith exception. The original panel should be reversed on this point, and I endorse Judge Gilman's rejection of the decisions of the Eighth and Eleventh Circuits. *See United States v. Johnson*, 78 F.3d 1258 (8th Cir. 1996); *United States v. Martin*, 297 F.3d 1308 (11th Cir.), *cert. denied*, 123 S. Ct. 667 (2002). Knowledge withheld, either by accident or through purposeful omission or misrepresentation, cannot resuscitate otherwise suppressible evidence, because an officer who neglects to inform fully the issuing magistrate and who then executes the defective warrant does not manifest an "objectively reasonable" good-faith belief that the warrant was valid. *Leon*, 468 U.S. at 922. Far from

demonstrating reasonable belief, the omitted information serves chiefly to highlight an officer's understanding of the warrant's deficiency because that officer is in a unique position to understand that the issuing magistrate lacked all the necessary data. Permitting information not presented to the issuing magistrate to serve as the lynchpin for invoking *Leon* perverts the meaning of the warrant requirement because it allows law enforcement officials to bypass the judiciary; evidence produced by inadequate search warrants, which are starved of information and seemingly doomed by insufficient probable cause, should not receive a reprieve solely because of information obscured from the issuing magistrate's consideration.

I part ways with Judge Gilman, as well as the majority, because of their conclusion that the officers here had an objectively reasonable good-faith belief in the warrant's legitimacy based upon the scant information actually given to the issuing magistrate. I would rule that these officers were "relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (quotation omitted). The majority holds that even though the affidavit did not provide enough of a nexus between the Carpenters' residence and the illegal activity to sustain probable cause, "the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity . . . ." Maj. Op. at 8. In the majority's view, the affidavit attesting to (1) the presence of marijuana "[n]ear" the residence and (2) "a road connecting" the residence to the area where the plants were growing did not suffice to give the officers probable cause to search, but supported the officers' objectively reasonable belief that the warrant was valid. *Id.* Because I believe that the two facts presented in the affidavit at best draw a tenuous and shadowy connection between the Carpenter residence and the marijuana plants that is not sufficient to meet the *Leon* standards, I cannot agree that a

reasonable officer could have believed that the warrant was valid.

The threshold issue is how to determine whether an officer has an objectively reasonable good-faith belief in the defective warrant's validity. The *Leon* Court wrote that "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." 468 U.S. at 922 n.23. "The objective standard . . . requires officers to have a reasonable knowledge of what the law prohibits." *Id.* at 919 n.20. Some minimal connection between the property or person to be searched and the alleged wrongdoing is a necessary, but not sufficient, precondition for the satisfaction of this objective standard. The mere existence of some nexus will not preserve evidence from the exclusionary rule when a reasonable officer, well trained in the practice of searches and presumed to understand the basic principles of the law in this area, submits an affidavit describing a connection that so plainly fails to establish probable cause that the reasonable officer should not have applied for the warrant initially.

The presence of marijuana "near" the Carpenter residence and the sighting of a road "connecting" the marijuana and the residence implied some relationship between the two, but this link was so minimal and so plainly failed to show probable cause to search that the officers could not have believed that the warrant authorizing the search was valid. Several courts have held that *Leon* does not apply when an affidavit offers an extremely limited factual basis for probable cause or an extremely minimal nexus, because such an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (quotation omitted). For example, the Eighth Circuit ruled that no reasonable officer could have believed that probable cause existed when the only evidence connecting the defendant's home to the cultivation of drugs was the presence of

marijuana on a farm close to the defendant, which was owned by his relatives. *United States v. Herron*, 215 F.3d 812, 815 (8th Cir. 2000). The court held that *Leon* did not apply, because there was neither evidence of marijuana growing at the defendant's residence nor proof of any participation by the defendant in the cultivation of the marijuana discovered at the other farm. *Id.* at 814. The "officers involved should have been fully aware of the deficiencies of their affidavits" because the affidavits, which make only a few passing references to the defendant, "simply do not say very much about [the defendant] or his residence." *Id.* & n.2; *see also United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988) (rejecting argument that *Leon* applied when affidavit did not link the searched residence to the defendant or explain why incriminating evidence may have been found there).

The cases upon which the majority relies are distinguishable from the facts here, because in each, the underlying affidavit contained considerably more detail or precision than Lawson's affidavit, and therefore made it possible for officers executing the warrant to form a reasonable belief that probable cause existed. In *United States v. Van Shutters*, 163 F.3d 331 (6th Cir. 1998), we upheld a search under *Leon* because the affidavit stated that the affiant had personal knowledge of the defendant's illegal activities, and because the affidavit described the location of the residence to be searched "with such particularity that a common sense inference is that the affiant visited the premises himself and presumably . . . observed [the defendant] in the premises." *Id.* at 337. In contrast to the majority's reading of *Van Shutters*, I do not believe that we applied the *Leon* exception based only upon an extremely minimal connection to the illegal activity, namely the defendant's access to the residence; we explained in *Van Shutters* that the affidavit presented a detailed connection such that "only a police officer with extraordinary legal training would have detected any deficiencies in [the] document." *Id.* Generally, when an affidavit provides

detailed facts and eschews vague descriptions of the location or person to be searched, it is much more likely that a law enforcement official could form an objectively reasonable belief that a warrant was valid. *See United States v. Watkins*, 179 F.3d 489, 493, 499 (6th Cir. 1999) (applying *Leon* when a six-page affidavit detailed several instances of the defendant's drug-related activity both at and away from a different residence that the police did not search, even though the affidavit did not mention a second house that was the object of the search); *United States v. Williams*, 3 F.3d 69, 70-71, 74 (3d Cir. 1993) (applying *Leon* because affidavit of housekeeper detailed specifics of illegal drug activity in motel room, such as "coded" knocks, overheard conversations, and observations of paraphernalia made while cleaning); *cf. United States v. Helton*, 314 F.3d 812, 816, 824 (6th Cir. 2003) (rejecting application of *Leon* exception even though a twenty-seven-page affidavit supported the warrant, because the affidavit relied too heavily on an anonymous tipster's recollections).

Additionally, the proximity of illegal marijuana cultivation to the property that is searched is a significant factor in assessing the objective reasonableness of an officer's belief that probable cause existed. In *United States v. Malin*, 908 F.2d 163 (7th Cir. 1990), the Seventh Circuit found that probable cause existed to search a residence, but questioned in the alternative whether *Leon* would apply. The court answered affirmatively because the officer's affidavit described his observation of marijuana growing directly next to a house in a fenced-in yard, even though the officer did not observe any individual near the marijuana. *Id.* at 165-67. *See also United States v. Huggins*, 299 F.3d 1039, 1041, 1045 (9th Cir. 2002) (concluding that an objectively reasonable officer could rely on an affidavit when it presented information that the defendant's home consumed electricity in a manner consistent with marijuana cultivation).

The facts here are much closer to *Herron* than they are to *Van Shutters* or *Malin*. Lawson's affidavit provided only the barest modicum of information to the issuing magistrate. Its brevity and vacuousness sharply distinguishes it from the detailed affidavit presented in *Van Shutters*. It did not connect the Carpenter residence to the marijuana observed; that the marijuana was seen "near" to the residence does not necessarily imply a connection between the two, particularly when Lawson knew that the plants were in fact approximately 900 feet from the Carpenter residence. Unlike *Malin*, when the marijuana grew in a fenced-in yard directly adjacent to the house, the marijuana "near" the Carpenters' trailer was far enough away that no officer could draw a firm connection between the two, or between the marijuana and any other residence in the neighborhood for that matter. If the marijuana had been growing next to the trailer or in the patch of corn behind the trailer, the officers' belief in the warrant's validity might have been more reasonable. Furthermore, the road "connecting" the residence to the marijuana plants was in reality a dirt path leading from the Carpenters' trailer to a separate tractor path that may have served as the connection between the city road and a homestead behind the Carpenters' trailer that had burned down several years before. The good-faith exception cannot apply here because Lawson's affidavit was based on two extremely inconclusive connections between the marijuana and the house, and therefore Lawson could not have reasonably believed that probable cause existed.

Because there was no probable cause to justify the search and because I do not believe that a law enforcement officer could form the objectively reasonable belief that the warrant was valid when so little linked the Carpenter residence to the marijuana plants growing "near" the residence, I would reverse the district court and exclude the evidence gathered from the illegal search.

---

**DISSENT**

---

BOYCE F. MARTIN, JR., Circuit Judge, dissenting. I join Judge Moore's very persuasive dissent and add only the following. Given the sophisticated technologies that the police now have at their disposal, as well as the wide discretion that they currently enjoy, it is especially important that we are careful not to expand their powers beyond what is authorized by the Constitution. In this case, the Constitution has been set aside in the name of expediency. Regrettably, we have descended further down that slippery slope of post-hoc rationalization, where everything that the police do becomes acceptable when viewed in retrospect.

For the reasons set forth by Judge Moore and for these reasons, I respectfully dissent.