NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0559n.06

No. 09-5721

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Aug 27, 2010

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| ROBERT ERNEST SILVEY, | ) | District of Kentucky |
| | ) | |
| Defendant-Appellant. | ) | |

Before: BOGGS, SILER, and MOORE, Circuit Judges.

BOGGS, Circuit Judge. After securing a warrant from a state magistrate, law enforcement agents searched Robert Silvey's home, uncovering numerous firearms and marijuana plants. In this appeal, Silvey challenges the district court's denial of his motion to suppress the evidence gathered during the search. Because the agents conducting the search relied on the warrant in good faith, we affirm the judgment of the district court. *See United States v. Leon*, 468 U.S. 897, 922 (1984).

I

In March 2008, an anonymous tipster contacted the Buffalo Trace Regional Narcotics Task Force (the "BTRNTF") and indicated that a Vietnam veteran living somewhere in Fleming County, Kentucky was cultivating marijuana inside his house. The tipster also indicated that the unidentified veteran was in possession of automatic weapons. While the tipster declined to divulge the veteran's name, the tipster did reveal that the veteran resided in a newly built home protected by a locked gate. According to the tipster, the gate was probably monitored by video cameras.

Based on this information, agents opened an investigation. There was initially little for them to go on, but the investigation gained steam on October 23, 2008, when the BTRNTF received a second anonymous tip. This time, the tipster identified the mysterious marijuana grower as Robert Silvey, a convicted felon. Research disclosed that Silvey lived at 2665 US 68, Ewing, Kentucky, an address located in Fleming County. Through surveillance of Silvey's property, agents determined that his house was the only dwelling situated at the end of a 300-yard driveway. Interviews with neighbors revealed that Silvey "often 'terrorized' some of [them] by firing what they believed were automatic weapons."

On October 27, 2008, agents collected a pair of garbage bags that had been left outside the entrance to Silvey's property. Inside the garbage bags, agents found "fresh green marijuana" clippings, which had been trimmed away from live plants to encourage additional growth. In addition to the trimmings, the bags contained a pharmacy receipt bearing the name of Teresa Silvey, Robert Silvey's wife.

Later that day, agents sought a warrant to search Silvey's residence. The affidavit for the warrant was executed by Agent Harmon and listed the place to be searched as the "only dwelling" located at "2665 US 68, Ewing, Fleming County, Kentucky." To establish probable cause, the affidavit set forth the following facts:

> [A]ffiant received information from . . . Bill Boggs that he had received information that Robert Silvey had been growing marijuana and had automatic weapons. . . . A criminal records check was made on Robert Silvey. We discovered Robert Silvey had a prior felony conviction before the Mason Circuit Court. We interviewed neighbors and discovered that there had been gun fire that the neighbors believed would be consistent with automatic weapons. On October 27, 2008, at 1:50 p.m., we seized two trash bags from the right-of-way outside the lane leading to 2665 US 68.

> Upon going through the trash bags we discovered what appeared to be fresh green marijuana. Based upon my training and experience, the fresh green marijuana found would be consistent with the grooming of cultivated marijuana to enhance the buds, weight and value of marijuana. There was a pharmacy receipt in the trash that showed Teresa Silvey had gotten a prescription filled. Teresa Silvey is the spouse of Robert Silvey.

Notably, the affidavit failed to state that Silvey resided at 2665 U.S. 68.

After reviewing the information in the affidavit, a Fleming County District Judge issued a warrant to search Silvey's residence.[1] When agents arrived to execute the warrant, Silvey was the only person they found. Agents immediately took him to the floor, handcuffed him, and placed him on a couch. After he was seated, one of the agents read him his *Miranda* rights. Meanwhile, other agents began searching his home, uncovering an "active marijuana grow in [his] basement." The home also contained a veritable armory's worth of firearms—a submachine gun, two loaded handguns, three rifles (one of which was silenced), and five others of various types.

During the search, Agent Tim Feagan questioned Silvey in the basement. At the start of the questioning, which was tape-recorded and lasted approximately 45 minutes to an hour, Silvey was asked if he had been advised of his rights. He answered in the affirmative and proceeded to confess that he grew the marijuana in the house "for his own use" and that "he made tea out of [it]." He also indicated that the firearms were his and recounted "where [they] came from."

The following day, after Silvey was released on bond, a number of agents went to his home to conduct a second interview. After agents knocked at the door, Silvey let them in, and they sat

---

[1]Nothing in the record indicates that agents furnished the magistrate with any information beyond what was in the affidavit.

down at the kitchen table, where the interview was conducted. At the outset, the agents "confirmed that Silvey had been Mirandized the previous day, that he understood those rights still applied, and that the interview was voluntary." During the interview, Silvey reiterated that he had been growing marijuana, and he admitted to keeping numerous firearms in his home despite his felony conviction.

On January 8, 2009, a federal grand jury sitting in the Eastern District of Kentucky returned a seven-count indictment against Silvey. The indictment charged him with a variety of drug- and gun-related offenses, including manufacturing marijuana and being a felon in possession of a firearm. The indictment also contained forfeiture specifications with respect to the guns recovered during the search.

Two months after the indictment was returned, Silvey moved to suppress the evidence found in his home, as well as the statements he had given to investigators. In his motion, he argued that the search was invalid due to the absence of information in the warrant affidavit giving rise to probable cause. He also argued that the good-faith exception to the exclusionary rule did not apply because a reasonable officer would have known that the warrant was insufficient. In addition, he asserted that his remarks to investigators were tainted by the illegality of the search. The district court rejected these arguments and denied his motion.[2]

On March 19, 2009, Silvey pleaded guilty to the charge of being a felon in possession of a firearm, reserving the right to appeal the district court's ruling on the issue of suppression. The

---

[2]Silvey also moved to suppress his statements on the grounds that he had not received proper *Miranda* warnings. This motion was denied, and Silvey makes no mention of it on appeal.

remaining charges were dropped pursuant to a Rule 11 plea agreement. A month later, he was sentenced to two years of imprisonment, to be followed by two years of supervised release.

He now appeals the denial of his motion to suppress.

II

"In appeals from a district court's ruling on a motion to suppress evidence, we review the [district] court's factual findings for clear error and its legal conclusions de novo." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citing *United States v. Combs*, 369 F.3d 925, 937 (6th Cir. 2004)). "[A] denial of a motion to suppress will be affirmed on appeal if the district court's conclusion can be justified for any reason." *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994) (citing *United States v. Barrett*, 890 F.2d 855, 860 (6th Cir. 1989)). When performing our review, we must view the evidence "in a light most likely to support the decision of the district court." *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009).

III

Silvey argues that the evidence obtained during the search of his home should be suppressed.[3] *See Illinois v. Krull*, 480 U.S. 340, 347 (1987) ("When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure."). Because the evidence was gathered pursuant to a warrant issued by a state magistrate, suppression is appropriate only if: (1) the

---

[3]In addition, Silvey argues that we should suppress his statements to the BTRNTF because the statements were fruit of the poisonous tree. However, we need not address this argument independently; if suppression of the evidence found during the search is unwarranted, then the fruit-of-the-poisonous-tree argument fails.

magistrate lacked a substantial basis for determining that there was probable cause to search Silvey's home; and (2) the agents conducting the search "could not have relied in objective good faith upon the . . . magistrate's decision to issue the warrant." *United States v. Koerth*, 312 F.3d 862, 865-66 (7th Cir. 2002) (citing *Leon*, 468 U.S. at 914); *see Illinois v. Gates*, 462 U.S. 213, 236 (1983).

In this case, we think it best to assume that the warrant was invalid—*i.e.*, that the magistrate lacked a substantial basis for finding probable cause—and proceed directly to the issue of good-faith reliance. *See United States v. Rowland*, 145 F.3d 1194, 1206 n.8 (10th Cir. 1998) (explaining that a reviewing court may "turn directly to the good-faith issue without first considering the validity of the warrant under the Fourth Amendment"). In *United States v. Laughton*, we explained that good-faith reliance on a subsequently invalidated warrant is impossible in four situations:

> (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 914-23; *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996)). Here, Silvey argues only that the third situation exists, contending that the affidavit was so barren of detail that a reasonable officer would have known that the warrant did not meet constitutional standards. Thus, the question becomes "whether the officers in the instant case had a reasonable basis to believe that the information that was submitted [to the magistrate] supported the issuance of a warrant." *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc).

To answer that question, we must consider the definition of probable cause. As the Supreme Court explained in *Gates*, probable cause exists when there is a fair probability, given the totality of the circumstances, that agents will find contraband or evidence of a crime in a particular place. 462 U.S. at 238. For this standard to be met, there must be a nexus between the place to be searched and the evidence sought. *Carpenter*, 360 F.3d at 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). In addition, the information relied upon to establish probable cause cannot be stale; there must be some indication that the evidence sought will be found at the time of the search. *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010).

With that in mind, we hold that the affidavit in this case contains sufficient indicia of probable cause to permit an officer to rely on the warrant in good faith. Critically, the affidavit states that a trash bag containing marijuana clippings was found at the end of a lane leading to the residence to be searched. The affidavit also states that the residence to be searched—2665 US 68—was the only residence on the lane. Given this information, one might fairly infer that the trash bag was likely to have come from the residence at 2665 US 68 and that the residence therefore contained marijuana at one time. Furthermore, the affidavit plainly indicates that the marijuana clippings were both fresh and consistent with sustained cultivation efforts. Thus, the information in the affidavit also permits the inference that, at the time the affidavit was executed, marijuana plants might still have been present in the home. Consequently, a reasonable officer could have concluded that the information in the affidavit was enough to establish probable cause. *See Carpenter*, 360 F.3d at 596 (finding that officers could reasonably rely on a warrant to search a house

where the warrant affidavit stated that there was marijuana growing near the house and that there was a road from the house to the marijuana).

Of course, the information in the affidavit does not eliminate the possibility that the marijuana came from somewhere else. The affidavit states that the trash was found at the end of a lane that dumped out into a rural highway. Admittedly, the trash could have been flung out the window of a passing car, or it could have fallen off the back of a garbage truck. However, when it comes to probable cause, the name says it all; certainty is never required, only a fair probability. When the issue is one of good-faith reliance, even less is necessary. *See United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (holding that *Leon* requires "a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place"). The affidavit must simply bear *some* indicia of probable cause. *See Laughton*, 409 F.3d at 748. Here, the affidavit's description of the trash bag at the end of the lane clearly defeats the notion that belief in the warrant's validity was objectively unreasonable. Thus, it is ultimately immaterial that there are alternative explanations for the bag's presence.

Accordingly, we hold that, because BTRNTF agents reasonably relied on the warrant in objective good faith, the evidence found during the search of Silvey's house is not subject to suppression under the exclusionary rule. *See Leon*, 468 U.S. at 922.

IV

For the foregoing reasons, we **AFFIRM** the district court's denial of Silvey's motion to suppress.