NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0001n.06

Case Nos. 20-4050/4259

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | **FILED**<br>Jan 03, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiff - Appellee, | ) ) |  |
| v. | ) ) | ON APPEAL FROM THE UNITED |
| EUGENE NICHOLSON (20-4050);<br>PATRICK BROWN (20-4259), | ) ) ) | STATES DISTRICT COURT FOR THE<br>NORTHERN DISTRICT OF OHIO |
| Defendants - Appellants. | ) ) ) |  |

Before: GIBBONS, READLER, and MURPHY, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Eugene Nicholson and Patrick Brown pled guilty to participation in the same drug conspiracy. Nicholson argues the district court erred in denying his motion to suppress evidence obtained pursuant to a search warrant. Brown argues he was denied effective assistance of counsel. Due to the distinct nature of the relevant facts and claims of each appellant, we address each case individually. We affirm the district court's denial of Nicholson's motion to suppress. We dismiss Brown's appeal without prejudice.

**I**

**A**

Nicholson's residence at 603 Wayne Street, Sandusky, Ohio, was searched pursuant to a warrant on August 24, 2018. The affidavit submitted in support of the warrant detailed observations of multiple suspected drug transactions between Daryl Castile and Siron Mills in and

around Castile's Chevrolet Tahoe in the parking lot of Metro Housing beginning in March 2018 that coincided with a series of suspicious text messages between Mills, Castile, and an unknown person, later determined to be Nicholson. On June 10, 2018, officers conducted a traffic stop of a vehicle driven by Mills two days after a meeting with Castile, leading to the seizure of around 1000 grams of cocaine. Detective Ronald Brotherton and Special Agent Kenneth Meier surveilled and investigated the text messages and Metro Housing parking lot meetings until August 2, 2018 before Meier, pursuant to a search warrant, applied a GPS tracking device on Castile's Tahoe. The GPS tracker revealed that Castile's vehicle visited 603 Wayne Street, which Meier determined to be Nicholson's residence, four times over a twelve-day period, typically staying for brief periods.

On August 22, 2018, visits to 603 Wayne Street preceded and followed a suspicious meeting between Mills and Castile in the Metro Housing parking lot. At 3:46 p.m., Castile's Tahoe arrived at 603 Wayne Street and parked near a Ford F-150 registered to and used by Nicholson. At 4:45 p.m., Castile "walk[ed] from the porch of 603 Wayne Street," drove away in the Tahoe, and parked in the Metro Housing parking lot. DE 64-1, Aff., Page ID 251. Mills walked toward the Metro Housing parking lot and up to the passenger side of the Tahoe. Two minutes later, Mills walked away and the Tahoe "travel[ed] directly back to 603 Wayne Street." *Id.* Meier observed Castile exit the Tahoe, walk towards Nicholson's residence, and sit in a chair on the porch next to Nicholson. Castile departed the residence via his Tahoe at approximately 4:59 p.m. Based on his "training, experience and knowledge of th[e] case," Meier believed that Castile obtained heroin and/or cocaine from Nicholson at Nicholson's residence, drove his Tahoe to the Metro Housing parking lot, and "provided Mills the drugs in exchange for US Currency." *Id.* at 252. Once "Castile completed the transaction with Mills," Meier believed Castile returned to Nicholson's

residence "to provide Nicholson the proceeds of the drug deal he had just completed with Mills." *Id.*

Given the officers' observations and beliefs and the three men's prior convictions for participation in the same drug conspiracy to distribute and possess cocaine, a Sandusky Municipal Court judge determined there was probable cause to search Nicholson's residence at 603 Wayne Street. Inside, officers found marijuana, creatine, a heat sealer with plastic bags, plastic gloves, a small silver pressing device, and a hydraulic press.

A federal grand jury indicted Nicholson, Brown, and six others, including Mills and Castile, for conspiracy to possess with the intent to distribute and distribution of controlled substances in violation of 21 U.S.C. § 846. After the district court denied Nicholson's motion to suppress evidence, he entered a conditional guilty plea.

**B**

Nicholson appeals the district court's denial of his motion to suppress evidence seized from his residence pursuant to the search warrant, arguing the warrant lacked probable cause.[1] We "review de novo the [district] court's legal conclusion that the affidavit provided probable cause" for the search warrant. *United States v. Brown*, 732 F.3d 569, 572 (6th Cir. 2013). In doing so, "we 'give great deference' to the [issuing judge's] conclusion that probable cause existed to issue the warrant." *United States v. Miller*, 850 F. App'x 370, 373 (6th Cir. 2021) (quoting *Brown*, 732 F.3d at 572–73). "[T]he duty of a reviewing court is simply to ensure that the [issuing judge] had

---

[1] Nicholson also argues the warrant did not satisfy the particularity requirement of the Fourth Amendment. Nicholson first raised this argument in his reply brief for his motion to suppress, and the district court ordered supplemental briefing on the issue. Nicholson entered his conditional guilty plea before the district court ruled on the issue of particularity. His plea agreement expressly waived his right to appeal except for the issue of "[w]hether the search warrant authorizing the search of Defendant's apartment was supported by probable cause and provided a nexus between the place to be searched and the things to be seized?" DE 121, Plea Agreement, Page ID 671. Before signing his plea agreement, the district court explained at his change of plea hearing that Nicholson's right to appeal would be severely limited by the agreement, and Nicholson stated that he understood. Nicholson did not preserve the issue of particularity for appeal, so we do not discuss it further.

a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (quotation marks and alterations omitted); *see also United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993). The issuing judge's determination of probable cause will not be set aside "unless we conclude that it was 'arbitrarily exercised.'" *United States v. Woods*, 858 F. App'x 868, 869 (6th Cir. 2021) (quoting *Leake*, 998 F.2d at 1363).

The Fourth Amendment prohibits the issuance of warrants without "probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Using a "totality-of-the-circumstances analysis," the issuing judge's task "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. "[T]he affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched. The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc)). For cases involving drug trafficking, "our cases leave no doubt that probable cause may exist if the evidence provided to [an issuing judge] directly connects the residence with the suspected drug dealing activity." *Miller*, 850 F. App'x at 373 (quotation marks and alterations omitted).

Here, the affidavit provides probable cause for the warrant because it sufficiently details the bases for the affiant's belief that evidence of drug trafficking would be found in Nicholson's home. It connects months of suspected drug transactions between Mills and Castile in the Metro Housing parking lot, including the observation of "a large amount of cash" on Mills's person and the seizure of 1000 grams of cocaine from a vehicle driven by Mills, to text messages between

Mills, Castile, and Nicholson. DE 64-1, Aff., Page ID 240–48. It details Castile's frequent visits to Nicholson's home, two of which occurred before and after a suspected drug transaction with Mills, which formed the officers' belief that Castile obtained drugs from Nicholson, delivered the drugs to Mills in exchange for money, and then gave the money to Nicholson. While officers never observed drugs at Nicholson's home, "we have permitted judges to infer a fair probability of finding evidence in a residence even though the affidavit did not state that such evidence had been observed directly." *Brown*, 828 F.3d at 383. Because the evidence in this affidavit directly connects Nicholson's residence with suspected drug dealing, the judge had a substantial basis for finding probable cause. *See id.* at 384; *Gates*, 462 U.S. at 238. We therefore affirm the denial of Nicholson's motion to suppress.

## II

### A

On May 18, 2018, District Judge Jeffrey Helmick granted an application for a wiretap on Brown's telephone based on Meier's investigation into suspected drug activity. Meier's affidavit relied in large part on information from a confidential source, CS#1, who had provided credible and reliable information since April 2017. Information provided by CS#1 contained in the affidavit "ha[d] been corroborated to the extent possible by independent investigation of law enforcement, including but not limited to, consensually monitored telephone calls between CS#1 and Patrick Brown, surveillance, and controlled purchases of drugs." DE 111-2, Aff., Page ID 564–65. The affidavit detailed seven controlled buys of cocaine between CS#1 and Brown and another buy with pending lab results. The affidavit also included information from another confidential source, physical surveillance, and pen register records and toll analyses of the target telephones.

In September 2018, Meier applied for a search warrant for location information on Brown's cell phone. In his affidavit, Meier explained that, as of May 24, 2018, CS#1 was "no longer being used as a [confidential source] in this investigation due to information that he/she purchased cocaine from Brown at times other than those done at the direction of [law enforcement] and the belief that this [confidential source] is using the cocaine he/she purchased on these other occasion(s)." DE 111-1, Aff., Page ID 517. In October 2018, search warrants were executed at Brown's mother's residence and Brown's residence. The searches resulted in the discovery of firearms, digital scales with residue, a narcotics press with residue, large amounts of cash, cell phones, and more than 100 grams of cocaine.

As noted, a federal grand jury indicted Brown, Nicholson, and six others for conspiracy to possess with the intent to distribute and distribution of controlled substances in violation of 21 U.S.C. § 846. The grand jury also charged Brown with three counts of distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1) and three counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).

During discovery, Brown's counsel filed, and the district court granted, multiple motions to extend the time to file pre-trial and dispositive motions. In the first motion, counsel claimed he could not open several discs obtained as part of discovery and that he "was recently tied down in preparing for two trials." DE 66, Mot. for Extension, Page ID 257. In the second motion, counsel again claimed he could not open several discs and stated that he "need[ed] more time with the Defendant concerning obtaining a negotiated plea." DE 74, Mot. for Extension, Page ID 308. After the district court granted another extension motion, counsel filed a motion to suppress challenging the sufficiency of the May and September affidavits and warrants. The government filed a motion to reconsider the court's latest extension of the motion filing deadline due to the

number of extensions already granted. The district court held a telephonic pretrial conference in which defense counsel failed to appear. At this conference, the district court denied Brown's motion to suppress as untimely and denied the government's reconsideration motion as moot. Shortly after, Brown's case was transferred to a different district judge.

Brown subsequently pled guilty to participation in the drug conspiracy pursuant to a plea agreement where the government agreed to dismiss the six other counts against Brown. The agreement stated that Brown "has no objection to and, agrees that he cannot oppose by law, the forfeiture of" multiple firearms and boxes of ammunition. DE 134, Plea Agreement, Page ID 720–21. Brown also "agree[d] that he has no right in the forfeited properties and he does not object in any way to their being forfeited and, by signing this agreement, he stipulates to this fact." *Id.* at 721. A two-level enhancement for possession of a dangerous weapon was recommended in Brown's Presentence Investigation Report. Brown objected to the weapons enhancement in his sentencing memorandum, arguing there was no evidence that he possessed the guns at issue and that he specifically included provisions in his plea agreement disclaiming an interest in the guns to prevent application of the enhancement. Brown's counsel raised the same objection at Brown's sentencing hearing. The district court overruled Brown's objection and applied the two-level weapons enhancement. The court used a final offense level of 33 and a criminal history category of IV to determine a guidelines range of 188 to 235 months. Brown was sentenced to 170 months' imprisonment, a downward variance of 18 months.

**B**

On direct appeal, Brown argues he was denied effective assistance of counsel because his trial counsel failed to timely file a suppression motion and incompetently advised him of his plea agreement and its consequences for sentencing. As a mixed question of law and fact, we review

ineffective assistance of counsel claims de novo. *United States v. Pryor*, 842 F. App'x 1023, 1024 (6th Cir. 2021) (per curiam).

This court is not "best suited to assess" facts related to ineffective assistance of counsel claims raised for the first time on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). "This is so even if the record contains some indication of deficiencies in counsel's performance." *Id.* Thus, "[a]s a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990) (per curiam). The "preferred mode for raising a claim of ineffective assistance of counsel" is a petition under 28 U.S.C. § 2255. *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012).

In "rare exceptions," we will decide the issue on direct appeal when "the record is adequate to assess the merits of defendant's allegations." *United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005) (quoting *Wunder*, 919 F.2d at 37). For example, in *United States v. Lewis*, we found "sufficient factual development in the record" when counsel failed to file a timely suppression motion and "the district court *clearly* indicated how it would have ruled on the suppression motion had it been timely filed."[2] 605 F.3d 395, 400 (6th Cir. 2010) (emphasis added); s*ee Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). The district court here did not issue a written opinion for its decision to deny Brown's motion to suppress as untimely and did not address the motion's merits. Thus, the record

---

[2] Lewis did not "present[] this alleged error as a distinct ineffectiveness claim," making it dependent on another alleged error that was not sufficiently developed in the record. *Lewis*, 605 F.3d at 400–01. We therefore declined to directly review Lewis's claim. *Id.* at 401.

does not reflect how the district court would have ruled on the suppression motion had it been timely filed. The proper resolution of whether the untimely filing prejudiced Brown is best suited for the district court on collateral review. *See United States v. Straughter*, 950 F.2d 1223, 1234–35 (6th Cir. 1991). Absent a developed factual record, we cannot evaluate Brown's ineffective assistance claim as to the suppression motion on direct review.

Brown's sentencing memorandum indicates that by disclaiming his interest and rights in the weapons in his plea agreement, Brown believed the weapons enhancement would not apply. The record does not, however, indicate whether Brown would have proceeded to trial had he known that the weapons enhancement would apply regardless of the plea agreement language. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement" when the defendant has pled guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). The record is therefore insufficiently developed for us to review the merits of Brown's ineffective assistance of counsel claim as to his weapons enhancement on direct review.

### III

We affirm the district court's denial of Nicholson's motion to suppress. We dismiss Brown's appeal without prejudice for him to raise his claim in a proceeding pursuant to 28 U.S.C. § 2255.