RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0273p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 18-5257

NICKEY ARDD,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:16-cr-20094-1—Samuel H. Mays, Jr., District Judge.

Argued:  December 5, 2018

Decided and Filed:  December 18, 2018

Before:  SILER, SUTTON, and WHITE, Circuit Judges.

_____

### COUNSEL

**ARGUED:**  David M. Bell, FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Naya Bedini, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.  **ON BRIEF:**  David M. Bell, FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Naya Bedini, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

_____

### OPINION

_____

SUTTON, Circuit Judge.  Nickey Ardd tried to buy a half pound of cocaine from an undercover Memphis police officer but was arrested instead.  Before trial, he moved to suppress evidence the police seized incident to the arrest, his subsequent statement, and evidence seized

from his home. The district court denied Ardd's motions, and a jury convicted Ardd of possessing drugs and guns. We affirm.

I.

Two confidential informants learned that Ardd wanted to buy supplies of cocaine and put him in touch with Memphis officer Harold Tellez, posing as a cocaine dealer from out of state. Ardd "kept on calling" the second informant, who relayed the message to Tellez; Ardd was "insistent" about purchasing a kilogram of cocaine from Tellez. R. 39 at 142. The two met on January 20, 2015, but Ardd didn't have the money to buy anything.

In June 2015, one of the informants told Tellez that Ardd was ready to buy. Tellez telephoned Ardd, who agreed to meet in a Memphis parking lot to buy about 250 grams of powder cocaine. Before the meeting, Tellez went to a county judicial commissioner and obtained a warrant to search Ardd's home for drug records and drug proceeds "[u]pon Ardd being arrested for attempting to possess th[e] cocaine." R. 68-1 at 1. Tellez's affidavit described his experience in narcotics investigations and explained the course of the investigation: A reliable informant had told him about Ardd's drug activities; Ardd contacted Tellez several times during the year about buying distribution quantities of cocaine; and Ardd was ready to buy. The affidavit described Ardd's residence and noted the police had surveilled it several times.

Officers observed the controlled buy and arrested Ardd after he showed Tellez money, climbed into Tellez's car, and took the bag of cocaine. Police searched Ardd and seized the cocaine, $9,800, and a loaded Glock pistol. They then searched his home, seizing thirty-four baggies of drugs, four digital scales, and a loaded Luger pistol with an obliterated serial number.

Police gave Ardd his *Miranda* warnings and supplied a written copy of them, which he signed and initialed. Ardd admitted that he came to the parking lot with a loaded gun to obtain cocaine, and that he had been making up to a thousand dollars a week in cocaine sales for years. He also admitted that he had more drugs and another gun at home.

Before trial, Ardd moved to suppress this incriminatory evidence. The court denied relief. A jury convicted Ardd of possessing cocaine with intent to distribute, being a felon in

possession of a weapon, carrying a weapon during a drug trafficking crime, and possessing a gun with an obliterated serial number.  The court sentenced him to 270 months.

II.

*Evidence seized from Ardd's home.*  The Fourth Amendment commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  In reviewing a search warrant application, a magistrate considers whether the information adds up to "a fair probability" that the police will find evidence of crime at the location.  *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983).  The salient question is whether the police can show a "nexus" between the site and the evidence.  *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc).  If the magistrate conditions the warrant on a triggering event, she must identify probable cause that the event will take place.  *United States v. Grubbs*, 547 U.S. 90, 96–97 (2006).

When officers violate a suspect's Fourth Amendment rights by using a defective warrant, say by failing to establish a nexus between incriminating evidence and the site of a search, suppression is the customary remedy.  *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961).  With an exception:  A court may admit evidence gleaned under the auspices of an unconstitutional warrant if a reasonable officer would not have appreciated the defect.  *United States v. Leon*, 468 U.S. 897, 919–21 (1984).  A defendant may defeat an officer's claim of good faith if the affidavit was so lacking in factual support that the officer's belief in probable cause was entirely unreasonable or the affiant included information that he knew or should have known was false.  *Id.* at 923.

As a few of our decisions confirm, we have struggled to identify the quantum of evidence needed to connect drug trafficking by an individual to a probability that evidence will be found at the individual's residence.  *See United States v. Brown*, 828 F.3d 375, 383–84 & n.2 (6th Cir. 2016).  Some cases suggest a bright-line rule—that adequate evidence of the one amounts to probable cause of the other.  *See, e.g.*, *United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009); *United States v. Kenny*, 505 F.3d 458, 461–62 (6th Cir. 2007); *United States v. Miggins*,

302 F.3d 384, 393–94 (6th Cir. 2002). Other cases require independent evidence tying the residence to drug activity to infer that it will contain evidence of drug trafficking. *See, e.g.*, *Brown*, 828 F.3d at 383–84; *United States v. Ellison*, 632 F.3d 347, 349–50 (6th Cir. 2011); *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005). We need not enter these frothy waters and pass on the validity of this warrant because the government met the *Leon* good-faith exception anyway. Still, it goes without saying—almost—that what police officers need to do to satisfy constitutional minimums in this arena is not invariably all they should do.

Good-faith reliance on an affidavit under *Leon* needs a "minimally sufficient nexus" between the site of the search and the evidence sought. *Carpenter*, 360 F.3d at 596. And it is not entirely unreasonable for an officer to infer a connection between evidence of drug trafficking and a drug dealer's home. *See, e.g.*, *Gunter*, 551 F.3d at 481–82. All that's required in the *Leon* context are facts that show a nexus and that are not "so vague as to be conclusory or meaningless," *Carpenter*, 360 F.3d at 596—all less than what's needed to show probable cause.

Case after case finds good-faith reliance in similar settings. *See, e.g.*, *United States v. McCoy*, 905 F.3d 409, 419 (6th Cir. 2018) (good-faith reliance on affidavit to search home, though affidavit merely tied drugs to defendants' place of business); *United States v. Higgins*, 557 F.3d 381, 391 (6th Cir. 2009) (good-faith reliance on affidavit to search home, though only evidence linking home to drugs was an untested informant's indication he'd just purchased drugs there); *Frazier*, 423 F.3d at 537 (good-faith reliance on affidavit to search home, though it tied drugs only to defendant's *former* residence); *Carpenter*, 360 F.3d at 596 (good-faith reliance on affidavit to search home, though it merely noted that defendant's residence was connected by road to nearby marijuana field).

Plenty of evidence supported the officers' good-faith belief that probable cause existed. Officer Tellez's affidavit confirmed that, in his experience, drug dealers often keep evidence of their criminal activity at their homes. His interactions with Ardd confirmed the informants' tips that Ardd dealt or was attempting to deal drugs—and confirmed that Ardd was looking for more than a small amount of drugs that might be used just for personal consumption. Ardd repeatedly told Tellez that he wanted distribution quantities of cocaine and that he was ready to buy over 250 grams of cocaine from Tellez. That's thousands of retail hits of cocaine. Before the

controlled buy, Memphis police had surveilled Ardd's residence and confirmed that he paid the utility bills and that his car was registered to that address. All of this was in the affidavit supporting the warrant, which the officers executed immediately after the controlled buy. It was not "entirely unreasonable" for Tellez and the other executing officers to believe there was probable cause to search Ardd's house for evidence. *Leon*, 468 U.S. at 923 (quotation omitted).

This case is leaps and bounds from cases that fall short of eligibility for the *Leon* good-faith exception. *See, e.g.*, *Brown*, 828 F.3d at 385 (no good-faith reliance on affidavit to search home where defendant was not known drug dealer, defendant hadn't been under investigation prior to arrest, and police waited three weeks after arrest to seek search warrant); *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006) (no good-faith reliance on affidavit to search home where it did not allege defendant was involved in drug dealing, simply that he'd been arrested there with drugs in his pocket).

Neither did the affidavit include information that Tellez knew or should have known was false. Police surveillance supplied Ardd's accurate address. Tellez's interactions with Ardd corroborated every material aspect of the informants' tips—that Ardd wanted to sell drugs and acted on his intentions. Ardd doesn't deny his conversations with Tellez, the agreement to buy cocaine from him, or showing up to the controlled buy. On this record, the officers were entitled to rely on the warrant to search Ardd's home.

Ardd counters that Officer Tellez knowingly or recklessly included two false statements in the affidavit. Neither statement, however, establishes a deliberate falsehood or material omission.

The first one says:

> Detectives with the Organized Crime Unit received information from a reliable Confidential Informant (CI) about Ardd being involved in the sale and distribution of powder cocaine in the city of Memphis. The CI observed Ardd possessing, storing and transporting both powder cocaine and crack cocaine in the past. . . . The Reliable [CI] has provided information in the past that has led to over 5 Felony drug arrests and convictions.

R. 68-1 at 1. According to testimony at the suppression hearing, Tellez worked with two informants during the investigation. The first one put Tellez in contact with Ardd about a year before his arrest in June 2015, but eventually stopped cooperating with the police and disappeared. Tellez and Ardd talked off and on during the six months before his arrest, as the first informant had supplied Ardd's contact information and Tellez was able to introduce a second informant to Ardd. The second informant, just before the arrest, told Tellez that Ardd was ready to buy. This informant had helped the Memphis police with multiple arrests in the past. By "conflat[ing]" the two informants and failing to explain the "unreliable" informant's role in the investigation, Ardd contends, Tellez knowingly or recklessly deceived the commissioner. Appellant's Br. 38.

Officer Tellez fairly explained all of this at the suppression hearing. He noted that the statement referred to the second, reliable informant—though he acknowledged that the first two sentences would also be true about the first, unreliable informant. That the statement could be read as indicating that only one informant was ever involved in this investigation does not sink to a deliberate falsehood or material omission.

Ardd next contends that Tellez lied when he wrote this in the affidavit: "On June 12, 2015 Ardd made contact by phone with [Tellez] and said that he was ready to purchase 9 ounces of powder cocaine." R. 68-1 at 1. Ardd points out that call records reveal that he in fact telephoned the reliable informant about this. The informant then told Tellez, who telephoned Ardd. At the suppression hearing, Tellez denied that "made contact" was an inaccurate description, explaining that all along Ardd would contact Tellez's associate, the informant, who would have Tellez call Ardd back. To the degree the characterization has any hints of inaccuracy, we can safely consider it an innocent mistake, not a deliberate falsehood, because, if rewritten the way Ardd prefers, it wouldn't make any difference. What matters is what remains undisputed: After many conversations with Tellez about buying a lot of drugs, Ardd agreed to buy them and set about doing so.

*Evidence from Ardd's arrest and statement.* Ardd appeals the denial of his motion to suppress the evidence seized at his arrest as well as his later statement, arguing that the purportedly illegal search warrant for his house tainted this other evidence. Not so. The warrant

bears only on the search of Ardd's home.  The police searched Ardd after observing him purchase drugs from Tellez.  While the affidavit and the warrant mention Ardd's person as well as his residence, the police didn't need the warrant to search him.  The search-incident-to-arrest exception to the warrant requirement supplied all of the authority they needed.  *See United States v. Robinson*, 414 U.S. 218, 235 (1973).  Ardd never offers a reason for ignoring this exception and does not deny that he gave his post-arrest statement voluntarily after his *Miranda* warnings.

*Evidentiary hearing.*  Ardd appeals the district court's denial of his request for a *Franks* hearing.  *Franks v. Delaware*, 438 U.S. 154, 156 (1978).  Defendants are entitled to a hearing on the truth of statements in a warrant affidavit if they make "a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or [made a] material omission in the affidavit," and also show "that the false statement or material omission is necessary to the probable cause finding in the affidavit."  *United States v. Young*, 847 F.3d 328, 348–49 (6th Cir. 2017) (quotation omitted).  But, as shown, the two allegedly false statements were not false at all, were assuredly not deliberately or recklessly false, and at any rate were immaterial to the commissioner's probable-cause finding.  No error occurred.

*Sufficiency of the trial evidence.*  Ardd claims that the jury lacked sufficient evidence to convict him of possessing the cocaine, carrying the Glock during a drug crime, or possessing the Luger with the obliterated serial number.  We view the evidence in the light most favorable to the government, and we will not disturb the jury's verdict if any rational juror could have found Ardd guilty beyond a reasonable doubt.  *United States v. Pierce*, 62 F.3d 818, 825–26 (6th Cir. 1995).

A rational juror could find Ardd guilty of each charge.  Police testimony established that, in buying a distribution quantity of cocaine, Ardd knowingly possessed cocaine with intent to distribute it.  *See* 21 U.S.C. § 841(a)(1).  The evidence showed that police found the Glock in Ardd's waistband at the scene of the controlled buy.  *See* 18 U.S.C. § 924(c)(1)(A)(i).  And the search of Ardd's home uncovered the Luger beside his bed.  *See id.* § 922(k).  This evidence sufficed to prove drug and gun possession.

That leaves Ardd with a steep hill to climb.  He begins that effort by claiming that alleged inconsistencies in the government witnesses' testimony undermine the verdict.  Several witnesses, he points out, gave differing amounts for the cash and cocaine recovered, and the police forensic chemistry report describes the drugs from the controlled buy as rock-like cocaine while the evidence report calls it powder.  He notes that the police testimony agreed that Ardd sat in the front passenger's seat of Tellez's car during the buy, but that photos from the scene show the cocaine in the front driver's seat.  He notes that the police disagreed about whether Ardd opened the bag of cocaine or merely held it, and whether Tellez asked Ardd to show the money beforehand.  And he notes the testimony of the friend who accompanied him to the controlled buy, who stated that he had not previously known Ardd to be a drug dealer.  Each of these alleged inconsistencies is minor at best.  More to the point, not one of them relates to the elements of drug possession or would prevent a rational juror from finding Ardd guilty of that charge.

Ardd argues, last but not least, that he could not be found guilty of possessing the Luger because the police did not recover any fingerprints from the gun and Ardd's girlfriend said it was hers.  But we have found constructive possession, even if joint possession, when a gun is located in the defendant's bedroom, as this one was.  *See United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005).  Ardd gives no reason why this case is any different.  The district court did not err in denying his motions for acquittal and a new trial.

We affirm.