**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

ROYCE LEQUIENT JOBE,
*Defendant-Appellee.*

No. 18-50204

D.C. No.
2:17-cr-00003-GW-1

OPINION

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted May 17, 2019
Pasadena, California

Filed August 9, 2019

Before:  Kim McLane Wardlaw and Andrew D. Hurwitz,
Circuit Judges, and Edward R. Korman,[*] District Judge.

Opinion by Judge Korman

---

    [*] The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel reversed the district court's order suppressing evidence found on a laptop that was seized pursuant to a State of California warrant and searched pursuant to a federal warrant.

The panel accepted that there was insufficient probable cause to seize the laptop, but held that a DHS special agent's affidavit supporting the state warrant contained sufficient information to render his reliance on the state warrant to seize the laptop reasonable.

The panel held that even assuming that the 21-day delay between the seizure of the laptop pursuant to the state warrant and the search of the laptop pursuant to the federal warrant was unreasonable, suppression is not warranted. The panel explained that the delay does not evince negligence on the part of the special agent, let alone deliberate and culpable misconduct; that the record does not suggest recurring or systemic negligence; that the special agent's good-faith efforts to comply with the Warrant Clause of the Fourth Amendment indicate that his conduct was not "sufficiently culpable that such deterrence is worth the price paid by the justice system"; and that there is no indication that the special agent believed he was depriving the defendant of a legitimate possessory interest.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Bram M. Alden (argued), Assistant United States Attorney; L. Ashley Aull, Chief, Criminal Appeals Section; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellant.

Margaret A. Farrand (argued), Deputy Federal Public Defender; Hilary Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellee.

**OPINION**

KORMAN, District Judge:

On or about October 26, 2016, Department of Homeland Security ("DHS") agents received a tip that marijuana was being grown at an address in Van Nuys, California. The tipper stated that shortly after Royce Jobe moved in next door, "a brown privacy fence was constructed to hide the view of the detached garage on the property," "a strong smell of marijuana" began emanating from the house, and there had been "a lot of activity in the late evening at the house including multiple vehicles arriving and individuals coming and going." On or about November 3, Special Agent Paul Cotcher found that the utilities account associated with the residence was not registered under Jobe's name. Cotcher prepared an affidavit outlining the information in the tip and stating that power use for the property had spiked, Jobe had prior convictions for possession of a firearm and marijuana, and Jobe had a business registered as "420 Boutique," a reference to marijuana. The affidavit also stated that Cotcher

had observed "PVC piping, planters, and cooling fans" attached to and around the garage.

Based on that affidavit, on November 21, a California state judge issued a warrant authorizing a search of Jobe's residence and the seizure of certain property, including "[a]rticles of personal property tending to establish and document sales of [marijuana,] . . . including . . . hard drives." The next day, on November 22, Cotcher and other officers executed the warrant and seized, among other items, drugs, a pistol, Jobe's laptop and other electronic devices. The laptop was not searched at that time.

After the evidence was seized, Cotcher contacted the United States Attorney's Office ("USAO") to ask whether the case would be prosecuted federally. Over the next ten days, Cotcher continued his investigation: He logged and arranged for storage of seized evidence, obtained Jobe's rental application and lease agreement, interviewed a postal employee who stated that Jobe mailed packages three to four times a week, and interviewed individuals whose names were tied to the utilities accounts Jobe used. On or about December 1, Cotcher was informed that the case would be prosecuted federally. He began drafting an affidavit in support of a criminal complaint and a federal warrant to search the laptop, which he completed on or about December 7. On December 12, twenty days after the laptop was seized, the complaint was filed and the warrant was signed. That same day, agents searched Jobe's laptop. The laptop contained messages indicating that Jobe had stolen credit card and bank account information. He was charged with identity theft, accessing devices without authorization, mail fraud, and being a felon in possession of a firearm.

Jobe moved to suppress the evidence found on the laptop. The district judge granted the motion, finding that,

while the state seizure warrant was supported by probable cause, the government unreasonably delayed before obtaining a second warrant to search Jobe's computer. The government timely appealed that order. We have jurisdiction under 18 U.S.C. § 3731 and reverse.

## DISCUSSION

"The fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009).

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in [the Supreme Court's] cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

*Id.* at 144. We review whether the exclusionary rule was properly applied de novo. *United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006).

## I. The State Warrant

We begin with an assessment of the seizure of Jobe's laptop pursuant to the state warrant. The exclusionary rule does not apply to an officer's "objectively reasonable reliance on a subsequently invalidated search warrant," unless the warrant was "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Leon*,

468 U.S. 897, 922–23 (1984) (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)). Even if an affidavit fails to establish probable cause, "an officer cannot be expected to question the magistrate's probable-cause determination," *id.* at 921, unless the affidavit is "bare bones," *i.e.*, "it fails to provide a colorable argument for probable cause," *United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013).

We accept that there was insufficient probable cause to seize the laptop. The state judge "lacked a substantial basis for concluding that probable cause existed" to seize the laptop because Cotcher's affidavit did not mention a computer or any electronic devices, much less state any facts suggesting that Jobe's laptop would likely contain evidence of a marijuana growing operation. *Id.* at 1081 (internal quotation and alteration marks omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)). Nevertheless, Cotcher's affidavit supporting the state warrant contained sufficient information to render his reliance on the warrant reasonable. It laid out facts indicative of a large-scale marijuana growing operation, including information from a tipper that was corroborated by Cotcher's own observations, investigation, and experience. Given the apparent scale of Jobe's operation, as indicated by his having a registered marijuana business and the substantial, consistent foot traffic to his residence late at night, the affidavit provided "a colorable argument for probable cause," *id.* at 1085, to seize items "tending to establish and document sales of marijuana." Cotcher reasonably relied on the warrant's authorization to seize digital devices, such as Jobe's laptop, that might contain such documents.

## II. The Federal Warrant

Jobe argues that even if the seizure of the laptop under the state warrant does not provide a basis for exclusion, the twenty-day delay between that seizure and the subsequent execution of the federal search warrant justifies suppression. Even assuming that the delay was unreasonable, we disagree.

The exclusionary rule has traditionally been driven by one primary policy consideration: the deterrence of unconstitutional acts by law enforcement. *United States v. Calandra*, 414 U.S. 338, 348 (1974) ("[T]he [exclusionary] rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect . . . ."); *see also Leon*, 468 U.S. at 909. The rule effects this goal in different ways, depending on the case. The most common is preventing police from benefiting from evidence obtained as a result of a constitutional violation, thereby removing the incentive to violate the Constitution to obtain evidence. *See, e.g.*, *United States v. Artis*, 919 F.3d 1123, 1133–34 (9th Cir. 2019); *United States v. Camou*, 773 F.3d 932, 944–45 (9th Cir. 2014).

But in another category of cases, police misconduct effectively bears no "fruit." *See United States v. Cha*, 597 F.3d 995, 1003 (9th Cir. 2010). Unreasonable delays fall into this latter category. *See id.* In those cases, "deterrent value" is only "a necessary condition for exclusion, . . . not a sufficient one. The analysis must also account for the substantial social costs generated by the [exclusionary] rule." *Davis v. United States*, 564 U.S. 229, 237 (2011) (quotation marks and citation omitted). Put another way, a court must determine that "deterrence is worth the price paid by the justice system" before suppressing evidence. *Herring*, 555 U.S. at 144.

*Cha* is our only prior decision addressing the issue posed in *Herring* in the context of delays. *See United States v. Burgard*, 675 F.3d 1029, 1035 (7th Cir. 2012) (so recognizing). *Cha* laid out several guideposts to follow. First, the analysis is objective in nature. *See Cha*, 597 F.3d at 1005; *see also Herring*, 555 U.S. at 145. We must consider "whether a reasonably well trained officer would have known that the search was illegal." *Leon*, 468 U.S. at 922 n.23. The greater the distance between the actions of a "reasonably well trained officer" and the actions of an officer in a particular case, the more likely it is that exclusion is the proper remedy. *See Cha*, 597 F.3d at 1005 ("[T]he police officers were a far stretch from *Leon*'s 'reasonably well trained officer.'").

*Cha* and *Herring* also explain that suppression is warranted "to deter deliberate, reckless, or grossly negligent conduct." *Herring*, 555 U.S. at 144. We summarized the misconduct in *Cha* as follows:

> The police seized the Chas' house for a minimum of 26.5 hours while Mr. Cha waited outside for the majority of the time—even to the early hours of the morning. The police refused to allow Mr. Cha to enter his house accompanied by a police officer to retrieve his diabetes medication for four hours. . . . [N]one of this delay was "unavoidable"—the officers had probable cause at 1 a.m., and . . . could have drafted the warrant application at least after the 12 p.m. briefing. The officers, however, had a "nonchalant attitude" and proceeded in a "relaxed fashion."

*Cha*, 597 F.3d at 1005–06. Such facts demonstrate more than sufficient culpability that exclusion is worth the costs. *Herring*, 555 U.S. at 144; *see also Leon*, 468 U.S. at 911 ("[A]n assessment of the flagrancy of the police misconduct constitutes an important step in the calculus.").

Cotcher's behavior is far-removed. There is no indication that Cotcher deliberately tarried or received insufficient training. Rather, immediately after seizing the laptop, he contacted the USAO about prosecuting the case federally. During the ten days between that initial contact and being told that the USAO would handle the case—a period which included the Thanksgiving holiday—Cotcher continued with his investigation. Once the USAO responded to his inquiry, he began drafting a detailed and lengthy affidavit in support of a federal search warrant, which he finished less than a week later and then transmitted to an Assistant U.S. Attorney. Jobe contends that Cotcher could have prepared an affidavit even without hearing from the USAO. But it is USAO policy to review warrant applications prior to their submission to a magistrate, so a reasonable officer in Cotcher's position could have believed that he could not submit his warrant application until the USAO decided to proceed. While Cotcher could have been more efficient in preparing an application, his delay does not evince negligence, let alone deliberate and culpable misconduct.

Even if police conduct is not "deliberate, reckless, or grossly negligent," "recurring or systemic negligence" alone may warrant deterrence through exclusion. *Herring*, 555 U.S. at 144. Here, however, the record does not suggest that such conduct will recur. Indeed, if there were evidence of repeated delays, Cotcher's behavior would no longer

qualify as "isolated police negligence." *Cha*, 597 F.3d at 1004.

More significantly, Cotcher obtained one warrant before seizing Jobe's laptop and a second warrant before searching it, whereas the officers in *Cha* waited until after the home had been seized to obtain any warrant. Cotcher's good-faith efforts to comply with the Warrant Clause of the Fourth Amendment indicate that his conduct was not "sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. Critically, there are no allegations that the affidavit presented to the magistrate to obtain the federal search warrant omitted or misrepresented any information. *See Leon*, 468 U.S. at 923 ("Suppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."). Nor does Jobe challenge that probable cause supported the federal warrant. *See id.* ("Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" (quoting *Brown*, 422 U.S. at 610–11 (Powell, J., concurring in part))).

Nor is there any indication that Cotcher believed he was depriving Jobe of a legitimate possessory interest. Rather, he reasonably believed that the laptop was lawfully seized pursuant to the state warrant. We have previously held that a twenty-one-day delay between the seizure of a laptop and obtaining a warrant is reasonable where the laptop is lawfully seized pursuant to an individual's consent. *See United States v. Sullivan*, 797 F.3d 623, 634 (9th Cir. 2015).

Jobe's reliance on *United States v. Dass*, 849 F.2d 414 (9th Cir. 1988), is misplaced. That case involved delays of between seven and twenty-three days in obtaining warrants to search hundreds of packages that were seized *without* a warrant at a post office in Hawaii. *Id.* at 414. Here, the initial seizure of the laptop was pursuant to a warrant.

The order granting Jobe's motion to suppress is **REVERSED.**