# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2024-0072
_____

STATE OF FLORIDA,

Appellant,

v.

KEVIN DERAY JOHNSON,

Appellee.

_____

On appeal from the Circuit Court for Okaloosa County.
John Jay Gontarek, Judge.

July 16, 2025

RAY, J.

The State appeals an order granting Kevin Deray Johnson's motion to suppress evidence seized from his residence pursuant to a warrant. The trial court agreed with his argument that the affidavit in support of the warrant failed to establish a sufficient nexus linking criminal activity with his residence, and accordingly lacked probable cause. Because we find that the officer's reliance on the warrant was objectively reasonable, the evidence seized during the search is admissible. The suppression order is therefore reversed.

I

Johnson is being prosecuted for possession of a firearm by a felon, possession of less than twenty grams of marijuana, and possession of synthetic cannabinoids. The evidence supporting those charges was seized during the execution of a search warrant at his residence.

In his affidavit and application for the search warrant, Investigator Corey Rawles described his six-month investigation of Johnson. He began by recounting his qualifications, which included years of experience investigating drug trafficking, his training in narcotics investigation, and his current assignment to a multi-agency drug task force with the local sheriff's office.

The next seven pages of the affidavit detailed Rawles's surveillance of Johnson, leading him to believe that Johnson was selling drugs that he kept at his residence. Johnson already had a long criminal history of possessing and dealing drugs. Over six months, Rawles watched him leave his home on weekdays and engage in repeated hand-to-hand transactions with known drug users at his friend's house. An identified eyewitness also complained to Rawles that Johnson was selling drugs at that location, and Rawles watched Johnson engage in other hand-to-hand transactions on a daily basis with individuals at a nearby vacant lot known for drug trafficking.

Rawles and another investigator performed two trash pulls at Johnson's residence during the two months immediately before he applied for the warrant. Both pulls revealed a large number of twisted and torn plastic bags that Rawles recognized as remnants used to make smaller "corner bags" to package drugs for sale. The first pull also revealed a tin-foil pipe with burned residue that tested positive for cocaine. In his application for the warrant, Rawles included photographs of Johnson's residence and the items recovered from both trash pulls.

Rawles also explained how, based on his training and experience, drug dealers routinely keep contraband such as their drug supply and paraphernalia along with the proceeds, instrumentalities, and records of their criminal activities at their

homes. He then explained why, based on the facts in his affidavit, he believed that such evidence would be found in Johnson's residence.

Persuaded that the affidavit established probable cause, a circuit court judge issued a search warrant for Johnson's residence. In the search that followed, officers discovered a firearm and illegal narcotics, leading to the charges against him.

Before trial, Johnson moved to suppress the evidence obtained from the search, arguing that the affidavit supporting the warrant lacked probable cause and the "good-faith exception" to the exclusionary rule did not apply. After a non-evidentiary hearing, the trial court entered a written order agreeing with Johnson. It concluded there was no nexus linking the criminal activity at the alleged sales locations with Johnson's residence, and the officers never confirmed that Johnson was selling narcotics at those locations by stopping customers or conducting a controlled buy. The court then discounted the investigator's belief that evidence of drug activities would be found inside Johnson's residence as a "conclusory statement." Finally, it determined that the "good-faith exception" did not apply because there was no evidence that any criminal activity was occurring inside the residence to be searched, and no officer could reasonably rely on the warrant.

The State has filed an immediate appeal from the trial court's suppression order. *See* Fla. R. App. P. 9.140(c)(1)(B). It argues that the warrant was supported by probable cause and, in any event, the "good faith exception" to the exclusionary rule applies. We need only address the State's second argument to resolve this appeal. Where, as here, the record supports a finding that the officer relied on the warrant in objective good faith, our analysis may properly begin and end with that inquiry. *See Wingate v. State*, 289 So. 3d 566, 571 n.6 (Fla. 1st DCA 2020).

II

A

The Fourth Amendment recognizes the right of the people to be free from unreasonable searches and seizures and permits

3

warrants only when supported by probable cause. Although it sets clear limits on government power, it says nothing about how those limits should be enforced.[1] To give effect to these protections, the Supreme Court developed the exclusionary rule, which generally bars the prosecution from using improperly obtained evidence at trial. *See Weeks v. United States*, 232 U.S. 383 (1914); *Mapp v. Ohio*, 367 U.S. 643 (1961).

The Court has made clear, however, that the exclusionary rule is not itself a constitutional right. Rather, it is a prudential doctrine designed to deter future violations by removing the incentive for law enforcement to disregard Fourth Amendment protections. *See Stone v. Powell*, 428 U.S. 465, 483 (1976); *United States v. Calandra*, 414 U.S. 338, 348 (1974). Because of its substantial social costs—often excluding reliable, trustworthy evidence—the rule applies only where the benefits of deterring police misconduct outweigh these costs. *See Davis v. United States*, 564 U.S. 229, 237 (2011); *Herring v. United States*, 555 U.S. 135, 141 (2009). Where exclusion serves no real deterrent function, it becomes a remedy that cannot "pay its way." *Davis*, 564 U.S. at 238 (quoting *United States v. Leon*, 468 U.S. 897, 908 n.6 (1984)).

Consistent with this balancing approach, the exclusionary rule does not apply when officers act in objective, good-faith reliance on a warrant issued by a neutral magistrate, even if the warrant is later found to lack probable cause. *See Leon*, 468 U.S. at 922. This principle, often framed as a "good faith exception," is better understood as a recognition that the rule does not apply in the absence of culpable police misconduct. The inquiry, therefore, is not simply whether the Fourth Amendment was violated but whether police acted with the kind of culpability the rule is meant to deter, namely, "'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights," *Davis*, 564 U.S. at 238.

---

[1] Florida's counterpart to the Fourth Amendment—Article I, section 12—does state that "[a]rticles or information obtained in violation of this right" are inadmissible, but only to the extent that such evidence "would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution." Art. I, § 12, Fla. Const.

To exclude evidence based on a judge's legal error, rather than any misconduct by the officer, would serve no meaningful deterrent purpose and would do so at the expense of the criminal justice system's truth-finding function. *Davis*, 564 U.S. at 239; *Leon*, 468 U.S. at 921.

But when an officer's reliance on a warrant is not objectively reasonable—such as when the underlying affidavit is "so lacking in indicia of probable cause"—the exclusionary rule applies. *See Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11, (1975) (Powell, J., concurring in part)). These so-called "bare bones" affidavits rest on nothing more than speculation or conclusory assertions. *See Illinois v. Gates*, 462 U.S. 213, 239–40 (1983); *see also United States v. Sanders*, 106 F.4th 455, 468 (6th Cir. 2024) (en banc) (explaining that "bare bones affidavits nakedly assume or vaguely conclude, without attempting to demonstrate why, probable cause has been satisfied"). They offer "no hint as to why police believed they would find incriminating evidence," *United States v. McCall*, 84 F.4th 1317, 1325 (11th Cir. 2023) (cleaned up), and fail to present even a "colorable argument" that probable cause exists, *United States v. Jobe*, 933 F.3d 1074, 1077 (9th Cir. 2019). In those situations, an officer's reliance on the warrant does not exhibit good faith but instead shows a reckless disregard for the protections guaranteed by the Fourth Amendment.

To be clear, the absence of probable cause does not make every affidavit "bare bones." That distinction matters "since the whole point of *Leon* was to preclude suppression of evidence seized in reasonable reliance on a warrant that was *not* properly supported by reasonable cause." *Wingate*, 289 So. 3d at 569. Thus, the standard for assessing an affidavit under the good-faith exception is less demanding than the "substantial basis" threshold required to establish probable cause in the first instance. *See United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004). More to the point here, "[a]ll that's required in the *Leon* context are facts that show a nexus and that are not 'so vague as to be conclusory or meaningless,'—all less than what's needed to show probable

cause." *United States v. Ardd*, 911 F.3d 348, 351 (6th Cir. 2018) (citation omitted).[2]

Indeed, it is "rare" to find a case "in which, although a neutral magistrate has found that there is probable cause, a lay officer executing the warrant could not reasonably believe that the magistrate was correct." *United States v. Zimmerman*, 277 F.3d 426, 440 (3d Cir. 2002) (Alito, J., dissenting). "Still, it goes without saying—almost—that what police officers need to do to satisfy constitutional minimums in this arena is not invariably all they should do." *Ardd*, 911 F.3d at 351.

B

Applying these principles to the facts of this case, we find that the affidavit supporting the warrant was not so lacking in indicia of probable cause that it was unreasonable for the officer to rely on it. Far from it.

Investigator Rawles's affidavit confirmed that for six months, Johnson was seen conducting daily hand-to-hand transactions with known drug users and other individuals who made short-term visits to the driveway or porch of his friend's house. That high-volume, short-term foot traffic would occur only when Johnson's vehicle was parked there. He would arrive by 9:00 each weekday morning, and an identified citizen eyewitness who also lived on the property told Investigator Rawles that Johnson was selling spice, or synthetic cannabinoids, at that location all day long. Johnson was also seen conducting hand-to-hand transactions while on foot and from his vehicle with groups of individuals at a nearby vacant lot known for drug trafficking. Investigator Rawles followed

---

[2] While we stop short of resolving the question of probable cause, that inquiry is still relevant to the good-faith analysis. *See United States v. Caesar*, 2 F.4th 160, 170–71 (3d Cir. 2021) (explaining how the facts in an affidavit are assessed under the less demanding standard of *Leon* to determine whether an officer could reasonably rely on a search warrant).

Johnson as he travelled back to his residence and then returned to continue his activities at the other locations shortly thereafter.

Trash was pulled from Johnson's residence twice, once in December and again in January, just days before Investigator Rawles applied for the search warrant. The residence was also listed as Johnson's home address with the Department of Corrections while he was on probation for a controlled substance offense. Only one bag of trash was found in the can each time, and the residence is not a multi-family unit; it is a free-standing house. In the first bag of trash, Investigator Rawles found multiple plastic bags that had been twisted with the corners torn off. Based on his training and experience, Rawles knew these bags were used to make corner bags for packaging smaller amounts of narcotics. He also found a tin-foil pipe that tested positive for cocaine. The second bag of trash contained seventy such torn plastic bags stuffed inside another bag. *See Cross v. State*, 560 So. 2d 228, 230 (Fla. 1990) (concluding that an officer's training, education, and experience are significant factors when deciding whether his observations amount to probable cause, particularly as it relates to the unique packaging of narcotics at the street level).

All of that information must also be considered in the context of Johnson's criminal history. He has a long criminal record with seven convictions for possessing and dealing narcotics beginning in 1995. At the time of this investigation, he was on probation for his most recent conviction in 2022 for possession of a controlled substance.

The affidavit is not obviously deficient simply because the drug sales took place at locations away from Johnson's residence. "When attempting to secure a valid search warrant, an applicant is not required to provide direct proof that the objects of the search are located in the place to be searched." *State v. Sabourin*, 39 So. 3d 376, 381 (Fla. 1st DCA 2010). "Nor is the affiant obligated to rebut every possible hypothetical a defense attorney may later imagine. Rather, the applicant must supply a sworn affidavit setting forth facts upon which a reasonable magistrate *could* find probable cause to support such a search." *Id.*

7

The nature of a crime can also support an inference that contraband or instrumentalities of a crime will still be in a suspect's residence, particularly the longer his criminal activity continues or when there is a close proximity in time between his crime and the search. *See State v. Weil*, 877 So. 2d 803, 805–06 (Fla. 5th DCA 2004) (reversing an order suppressing evidence seized from a suspect's residence that concluded the warrant was defective for not providing direct proof his home was the repository of instruments used to commit crimes elsewhere; reasoning that probable cause must be evaluated in light of the nature of the crime, and that the nexus element of a search warrant may be inferred despite the lack of direct proof that the items sought are located in the place to be searched).

Thus, an officer could reasonably rely on the judge's conclusion that there was probable cause to search Johnson's residence for evidence related to his sale of drugs elsewhere. Far from being a "conclusory statement" as characterized by Johnson and the trial court, Rawles's belief that evidence of drug activities would be found inside Johnson's residence is supported by the detailed information recounted above that must be evaluated through the lens of his training and experience. *See Hatcher v. State*, 342 So. 3d 807, 810 (Fla. 1st DCA 2022) (reaffirming that under a totality-of-the-circumstances approach, officers may draw on their training and experience to make inferences and deductions about criminal activity). Rawles thoroughly explained how and why drug dealers often use their residences to store contraband along with the proceeds and records of their activities. Viewed in that light, the affidavit provides a more-than-minimally sufficient nexus between Johnson's drug sales and his residence.

For the same reasons, it was not entirely unreasonable for an officer to rely on the warrant even though no drugs were seized or identified at the sales locations. Rawles's experience with the drug trade and his comprehensive observations over several months firmly support a good-faith belief that Johnson was selling drugs. *Cf. Elliott v. State*, 597 So. 2d 916, 918 (Fla. 4th DCA 1992) (holding that probable cause existed based on the observations of an experienced officer who saw an exchange of hands between the defendant and another individual in an area known for drug trafficking); *Knox v. State*, 689 So. 2d 1224, 1225 (Fla. 5th DCA

1997) (holding that probable cause existed when an experienced officer conducted surveillance after receiving complaints of drug dealing at a location and saw the defendant engage in hand-to-hand transactions with individuals, even though the officer could not see what was being passed between them).

Even if the judge erred by determining there was probable cause in the first instance, the affidavit still contains more than enough information for the officer to defer to that legal conclusion. *See McCall*, 84 F.4th at 1325 (recognizing there is a "sound presumption" that a judge is more qualified than an officer to make a probable cause determination, and an affidavit must give "no hint" as to why evidence would be found before an officer will be precluded from relying on a search warrant); *see also United States v. Matthews*, 12 F.4th 647, 653 (7th Cir. 2021) (reasoning that ordinarily, an officer cannot be expected to question a probable cause determination by a magistrate or judge because they are typically more qualified to make that decision).

## III

At bottom, the affidavit shows a nexus that is "not 'so vague as to be conclusory or meaningless,'" thus satisfying the less demanding good-faith standard articulated in *Leon*. *Ardd*, 911 F.3d at 351. There is nothing to suggest that the officer acted deliberately, recklessly, or with gross negligence in relying on the issuing judge's determination regarding the warrant's validity. At the very least, the affidavit "provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officer['s] reliance on the [judge's] determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate." *Leon*, 468 U.S. at 926.

REVERSED and REMANDED for further proceedings.

ROWE and M.K. THOMAS, JJ., concur.

———————————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————————

James Uthmeier, Attorney General, and Daren L. Shippy, Assistant Attorney General, Tallahassee, for Appellant.

Laresa A. Dudley of Dewrell & Herndon, Crestview, for Appellee.